THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LULA TRAPPS, Defendant-Appellant.

(No. 73-197;

Third District—October 11, 1974.

1030

Stephen Hurley, of State Appellate Defender's Office, of Ottawa, for appellant.

James O. Christy, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant Lula Trapps was found guilty of theft in a nonjury trial and was sentenced by the Circuit Court of Peoria County to serve a term of 1 to 3 years imprisonment.

The defendant contends that the State did not prove beyond a reasonable doubt that she participated in the theft. She argues that all her actions can be explained on the theory of innocence. The State does not argue that defendant herself committed the theft; its position is that the evidence established that a theft was committed and that the defendant is legally accountable for the conduct of the actual thief. The State bases its case on the theory of accountability pursuant to section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2) which provides in part, that

> "A person is legally accountable for the conduct of another when: * * * (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

In order to bring the accused within the purview of the statute, three propositions must be established: (1) that she solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) that this participation on her part must have taken place either before or during the commission of the offense; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (People v. Ramirez, 93 Ill.App.2d 404.) The nature of the defendant's contention requires that the evidence be set out in some detail.

Jerome Short, a Peoria police officer, testified that he went to the J. C. Penney store pursuant to a call and there picked up Lawrence Conrad the assistant manager and the two drove to D. Schaffer South, a woman's clothing store. While inside the store the officer saw two black females in

the rear of the store. He left the store, parked his squad car across the street and waited about 60 to 90 seconds when Gwendolyn Wilson came out of the store carrying a large gray sack. She began walking east about 100 feet when *she saw his squad car and then began to walk very fast, almost running.* About *10 seconds later* the defendant came out of the store and there was then about 40 feet between defendant and Gwendolyn Wilson. Defendant began walking east at a fast pace, she looked in the direction of the squad car and then waved and hollered something at Gwendolyn Wilson who then broke into a dead run and ran into the Central Illinois Light building. Gwendolyn Wilson had a pantsuit, priced at $200 with the D. Schaffer South label on it, in the sack she was carrying. Joseph Williams, another Peoria policeman, said he saw the defendant walking at a normal pace and waving at Gwendolyn Wilson, who was about 20 feet from defendant and whose pace then quickened. Defendant then ran across Liberty Street toward the Commercial National Bank. As she began to cross the street he exited his squad car and asked her to come over which she did. A subsequent search of her person revealed no property other than her own. She had over $100 cash in her purse.

Lawrence Conrad testified that he had seen both defendant and Gwendolyn Wilson in his store earlier that morning.

Florence Kreigshauser was working at the front of the D. Shaffer South store when defendant and Gwendolyn Wilson came in to see some coats. She took them to Mary Alice Cleerman, a saleslady in the rear of the store where coats were located. Gwendolyn Wilson had an empty paper sack folded under her arm. After Officer Short came in she walked back to Mrs. Cleerman and told her to watch the girls very carefully. Gwendolyn Wilson left the store alone shortly thereafter; the bag she had was no longer flat but bulging with something in it. The defendant left the store *a minute or two* later. Mrs. Kreigshauser identified the stolen pantsuit as having come from the store. It was a size 8 and its retail price was $200. She estimated Gwendolyn Wilson to be size 8; the defendant a size 16.

Mary Alice Cleerman testified that she proceeded to show them coats. Defendant and Gwendolyn Wilson then separated but came back together. While they were looking at a rack of clothes *one* of them made a gesture described as a sort of opening and closing of a coat. She could not remember who made the gesture but later she said that the girls made no physical gesture to each other of any sort. Immediately after the gesture Gwendolyn Wilson went to the front of the store and out. Mrs. Cleerman then attempted to go to the front of the store in pursuit but was unable to get past the defendant who was moving down the

racks and who detained her by "stepping gestures" pretending to be looking at things on the garment racks. She further testified that this encounter lasted from 30 seconds to a minute, the aisle was 2 to 2½ feet wide; she was not physically held back nor did she ask to get by defendant. No overt action was taken by defendant against her. She then went to front of the shop where she saw defendant leave. On cross-examination she agreed that defendant "just looked from one rack to another rack" and that she had seen customers do that before as they sauntered out of the store.

The defendant testified that she saw Gwendolyn Wilson first on Adams Street that morning and the two of them went directly to D. Schaffer South. She denied having been in the J. C. Penney store earlier. She looked at some coats but didn't try any on. She did not know that Gwendolyn Wilson was stealing a pantsuit nor did she aid or assist in the commission of the theft. When she left the store she headed for the bank to purchase a money order, she waved at Gwendolyn Wilson and said she was going to the bank and would see her later.

The prosecution hypothesizes (1) the gesture described as a sort of opening and closing of a coat, (2) the stepping gestures in the aisle, and (3) the waving at and yelling something to Gwendolyn Wilson, as conduct from which inferences may be drawn that defendant was aiding and abetting Gwendolyn Wilson in the commission of a theft.

It is unclear how (1) tends to incriminate the defendant when the witness could not remember who made the gesture and in fact testified that the girls made no physical gestures toward each other of any sort.

As to (2) the witness obviously felt that she was being obstructed yet the State concedes in its brief that if the defendant had merely obstructed the way of Mrs. Cleerman for a few seconds, then let her by, perhaps the inference would not be so strong. Officer Short testified that the defendant came out of the store about 10 seconds after Gwendolyn Wilson and about 40 feet separated the girls. Officer Williams said only 20 feet separated the girls. It is clear that the obstruction, if any, must have been of very short duration and could not have lasted from 30 to 60 seconds. Further, no overt action was taken.

As to (3) the State contends that after the waving and vocal message from defendant the thief broke into a dead run. Officer Short testified that when the thief came out of the store she began walking east about 10 feet when she saw his squad car and then began to walk very fast, almost running.

■■■ To sum up, the State's entire case consisted of three ordinary occurrences, the movement of a coat, shuffling through clothing racks in a narrow aisle, and waving and yelling. While circumstantial evidence is

legal evidence, yet to warrant a conviction on such evidence the facts proved must so thoroughly establish the guilt of the person accused as to exclude every reasonable hypothesis of innocence. Where an act may be attributed to a criminal or to an innocent cause it will be attributed to the innocent cause rather than to the criminal one. A crime is never presumed where the conditions may be explained on an innocent hypothesis. (*People v. Benson,* 19 Ill.2d 50, 61.) With all the evidence for the State considered it is not of that convincing character that satisfies the mind. On this record there is reasonable doubt of the guilt of defendant. Therefore, the judgment of the trial court is reversed.

Judgment reversed.

SCOTT, P. J., and STOUDER, J., concur.