No. 3--05--0747

Filed September 12, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court
ILLINOIS, ) of the Ninth Judicial Circuit,
) Knox County, Illinois
    Plaintiff-Appellee, )
)
        v. ) No. 05--CF--249
)
JANET L. TURNER, )
) Honorable James B. Stewart,
    Defendant-Appellant. ) Judge, Presiding.

JUSTICE SCHMIDT delivered the opinion of the court:

The State charged defendant, Janet L. Turner, with theft. Following a bench trial, the circuit court of Knox County convicted defendant and sentenced her to 2 days' imprisonment with credit for time spent in presentence incarceration and 24 months' probation and assessed a $200 fine, costs, and penalties. Defendant appeals. For the reasons below, we affirm.

BACKGROUND

The State filed an information charging defendant with theft by knowingly exerting unauthorized control over the property of Charles Vandell, consisting of two bundles of roofing shingles valued at $300, with the intent to permanently deprive Vandell of

the use of the property. At defendant's arraignment, defense counsel entered a plea of not guilty on the defendant's behalf and waived defendant's right to a trial by jury. Defendant was present during the arraignment, expressed oral assent to the bench trial date, and executed a written jury trial waiver.

On the day of trial, defense counsel moved for a continuance because he had a potential conflict of interest in calling the codefendant, Kevin Smith, to testify. Defense counsel had represented Smith at Smith's plea hearing 30 to 60 days prior to trial. Smith pled guilty to charges stemming from the theft of the shingles. The trial court denied defendant's motion to continue, finding that a conflict of interest did not exist and stating that, if necessary, it would admonish Smith of his right to silence regarding other unindicted offenses allegedly committed with a different person. The cause proceeded to trial; defendant did not call Smith to testify.

Dorothy Jones testified on behalf of the State. Dorothy lives next door to Vandell, and on the afternoon in question, she observed a vehicle parked on Vandell's lot near several bundles of roofing shingles. Dorothy saw defendant standing by the car and saw a man, Kevin Smith, picking up bundles of shingles and putting them into the backseat of the car. Dorothy testified that defendant conversed with Smith and pointed to shingles. Dorothy further testified that when defendant saw Dorothy, she

2

got back into the front passenger seat of the car. Dorothy told her husband that someone was taking the neighbor's shingles. Wilbur Jones, Dorothy's husband, got up and yelled "Hey" at Smith three or four times before Smith got into the car, backed up, and sped off, running a stop sign. Wilbur did not see the defendant, but heard the passenger car door slam. Dorothy recorded the vehicle's license plate number and contacted the police.

During the course of their investigation, the police received a report from Lowe's regarding a "suspicious" return of two bundles of shingles to the store. Police recovered the shingles from Lowe's and contacted Vandell. Smith and defendant were together at Lowe's when police arrived in response to the report. Vandell went to his lot and noticed that two bundles of shingles were missing and, at the police station, identified the shingles recovered from Lowe's. Vandell testified that each bundle weighs approximately 80 pounds. The police photographed the shingles and then returned them to Vandell. The police transported Smith and defendant to the police station. Smith spoke to police, but defendant did not.

Following trial, the trial court found defendant guilty of theft. This appeal followed.

ANALYSIS

Four issues are raised on appeal: the sufficiency of the evidence to convict defendant beyond a reasonable doubt, the

3

defense counsel's conflict of interest in representing the defendant and codefendant, the knowing waiver of the right to a trial by jury, and defendant's entitlement to a $10 credit for two days spent in presentence incarceration.

## A. Sufficiency of the Evidence

In a challenge to the sufficiency of the evidence, the court will view the evidence "'in the light most favorable to the prosecution'" and determine whether "'<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). The evidence must be "so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt" to merit reversal. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

Circumstantial evidence that proves the elements of the crime beyond a reasonable doubt "is sufficient to sustain a conviction." *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). The trier of fact can make reasonable inferences and is not required to prove "each link in the chain of circumstances" beyond a reasonable doubt or "search out all possible explanations consistent with innocence." *People v. Campbell*, 146 Ill. 2d 363, 380, 586 N.E.2d 1261, 1268 (1992).

4

The court "will not substitute its judgment" for determinations made by the trier of fact regarding the weight of evidence and credibility of witnesses (*People v. Young*, 128 Ill. 2d 1, 51, 538 N.E.2d 461, 473 (1989)), but will not accept eyewitness testimony where "no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280, 818 N.E.2d 304, 308 (2004).

A defendant is accountable for the conduct of a codefendant when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5--2(c) (West 2004). Mere presence at the scene of the crime with knowledge of its commission alone does not establish accountability, but active participation is not required to render a defendant accountable for the acts of another. *People v. Reid*, 136 Ill. 2d 27, 61, 554 N.E.2d 174, 190 (1990).

A defendant need not act affirmatively if there is a "common criminal plan or purpose." *People v. Taylor*, 164 Ill. 2d 131, 140-41, 646 N.E.2d 567, 571 (1995). A common criminal plan or design can be inferred from the circumstances, and a defendant need not express "[w]ords of agreement" to be held accountable for a codefendant's criminal acts. *Taylor*, 164 Ill. 2d at 141, 646 N.E.2d at 571. In *Taylor*, our supreme court identified some

5

circumstances that may be considered by the trier of fact in determining defendant's legal accountability.  These factors include: (1) presence at the scene without disapproval, (2) "flight from the scene," (3) "fail[ure] to report the crime," (4) close affiliation with the codefendant afterward, (5) sharing the proceeds of the criminal act, and (6) destroying or disposing of evidence.  *Taylor*, 164 Ill. 2d at 141, 646 N.E.2d at 571.  There is no indication in *Taylor* that the list of factors or circumstances was meant to be exhaustive.

Accompanying the codefendant to the scene with knowledge of the commission of a crime with any affirmative contact between the defendant and the codefendant indicates a shared criminal purpose. Compare *People v. Houston*, 258 Ill. App. 3d 364, 368, 629 N.E.2d 774, 778 (1994) (finding a common criminal design that defendant accompanied the codefendant to the scene of the crime, did not attempt to prevent the crime, and alerted the codefendant of a fleeing victim), with *People v. Perez*, 189 Ill. 2d 254, 268, 725 N.E.2d 1258, 1266 (2000) (finding no shared criminal purpose because defendant did not appear at the scene with the codefendants, joined the codefendants to pay an unrelated monetary debt, and lacked knowledge regarding the circumstances of the ongoing confrontation).

Defendant relies on *People v. Ceasar*, 231 Ill. App. 3d 54, 596 N.E.2d 89 (1992), and *People v. Trapps*, 22 Ill. App. 3d 1029,

6

318 N.E.2d 108 (1974), to support her argument that the evidence was insufficient to convict. Unlike in *Ceasar* or *Trapps*, there is no dispute that defendant accompanied the codefendant to the scene, and it was reasonable to infer that she not only had knowledge of the criminal purpose, but affirmatively acted to support that purpose by conversing with Smith during the crime and pointing to bundles of shingles. *People v. Ceasar*, 231 Ill. App. 3d at 56, 596 N.E.2d at 90 (finding that defendant's appearance and flight with the codefendant after the commission of the crime was insufficient to hold him accountable); *People v. Trapps*, 22 Ill. App. 3d at 1032-33, 318 N.E.2d at 110-11, (holding that defendant's presence at the scene of the crime without any evidence that she knew of the codefendant's actions, fled with the codefendant, or continued to associate with the codefendant did not support a finding of a common criminal design).

Because it is already established beyond a reasonable doubt that defendant was at the scene without disapproving of the commission of the crime, fled with the codefendant, and was with him at Lowe's afterward, it is not necessary to establish that she displayed a guilty conscious after she saw the witness, Dorothy Jones. The trier of fact can infer from the facts that when defendant fled with her codefendant, she displayed a guilty conscious, thus further supporting an inference of a common

7

criminal design. *People v. Taylor*, 164 Ill. 2d 131, 142, 646 N.E.2d 567, 572 (1995) (stating defendant's flight without a determination of defendant's state of mind was sufficient to support a finding of a common criminal purpose). However, we find nothing unreasonable about the trial court's finding that defendant displayed guilty knowledge by getting back into the car when she saw the witness so that she could not be seen as well as when she was standing outside the car.

The evidence taken in the light most favorable to the prosecution establishes beyond a reasonable doubt that defendant's presence at the scene of the crime without disapproval, flight with the codefendant, failure to report the crime, and continued association with the codefendant are sufficient to support an inference of a shared criminal design, and, therefore, sufficient to convict defendant of theft.

B. Conflict of Interest of Defense Counsel

In defendant's second contention on appeal, she argues for reversal of her conviction and remand for a new trial because her counsel labored under an impermissible conflict of interest.

*Per se* conflicts of interest arise when defense counsel has a "contemporaneous association with either the prosecution or the victim" and requires no showing of prejudice to reverse a conviction. *People v. Spreitzer*, 123 Ill. 2d 1, 14, 525 N.E.2d 30, 34-35 (1988). A *per se* conflict of interest presents a

8

question of law and we review *de novo*.  *People v. Miller*, 199
Ill. 2d 541, 544, 771 N.E.2d 386, 387 (2002).

Joint representation of defendants does not create a *per se*
conflict on interest.  *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64
L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1718 (1980).  If defense
counsel raises a conflict of interest, the trial court must
either appoint new counsel or perform a factual inquiry to
determine if an actual conflict of interest exists.  *Holloway v.
Arkansas*, 435 U.S. 475, 483-84, 55 L. Ed. 2d 426, 433-34, 98 S.
Ct. 1173, 1178-79 (1978).  If the trial court fails to appoint
new counsel or investigate the potential conflict, reversal is
automatic without a showing of prejudice by the defendant.
*Spreitzer*, 123 Ill. 2d at 18, 525 N.E.2d at 36; *Holloway v.
Arkansas*, 435 U.S. at 488, 55 L. Ed. 2d at 436-37, 98 S. Ct. at
1180-81.

The First District noted that the courts have not defined
under what standard a court reviews the investigation into a
potential conflict of interest.  *People v. Moore*, 338 Ill. App.
3d 11, 16, 788 N.E.2d 68, 72-73 (2003).  The court found that the
"decision involves the court's need to oversee the courtroom and
maintain the progress of proceedings," therefore holding that the
court would not disturb the trial court's decision "absent an
abuse of that discretion."  *Moore*, 338 Ill. App. 3d at 16, 78
N.E.2d at 72.  Because defense counsel raised the conflict of

9

interest prior to trial and the trial court inquired into the nature of the conflict, we will not reverse the conviction unless the trial court abused its discretion.

When the interests between codefendants are hostile or antagonistic, an impermissible conflict of interest arises out of joint representation that denies a defendant effective counsel. *People v. Echols*, 74 Ill. 2d 319, 327, 385 N.E.2d 644, 648 (1978). When a codefendant testifies against another defendant, the defenses are antagonistic, causing an impermissible conflict of interest. *People v. Taylor*, 165 Ill. App. 3d 1016, 1021, 520 N.E.2d 907, 912 (1988); *People v. Ware*, 39 Ill. 2d 66, 67-68, 233 N.E.2d 421, 421-22 (1968).

When one defendant admits guilt while the other maintains innocence or when one defendant is allegedly more culpable than the other, the defenses are not antagonistic. *People v. Drummer*, 81 Ill. App. 3d 626, 630, 402 N.E.2d 307, 310 (1980); *People v. Sanders*, 209 Ill. App. 3d 366, 375, 568 N.E.2d 200, 205-06 (1991). A conflict of interest that is "hypothetical or speculative" does not create a duty that requires the trial court to appoint new counsel. *People v. Robinson*, 79 Ill. 2d 147, 169, 402 N.E.2d 157, 168 (1979); *People v. Berland*, 74 Ill. 2d 286, 300-01, 385 N.E.2d 649, 656 (1978).

The attorney-client relationship is not terminated when a co-defendant has not been sentenced, despite being found or

10

pleading guilty prior to the defendant's trial; where such co-defendant testifies to inculpate the defendant on trial, the defenses are antagonistic and defense counsel cannot properly represent one defendant without inculpating or harming the other. *Taylor*, 165 Ill. App. 3d at 1021, 520 N.E.2d at 912 (holding defense counsel labored under a conflict of interest when a codefendant claimed innocence while claiming the other defendant was solely responsible for the criminal offenses); *Ware*, 39 Ill. 2d 66, 67-68, 233 N.E.2d at 422 (holding that defense counsel is not free to cross-examine and impeach a codefendant testifying for the State because defense counsel still had to advocate for the co-defendant during sentencing).

The codefendant was not testifying for the State and was sentenced to conditional discharge 30 to 60 days prior to defendant's trial. The attorney-client relationship between defense counsel and codefendant was severed; defense counsel was free to represent the defendant in a singular capacity. Defendant further argues that a conflict of interest remained because defense counsel knew about evidence of similar offenses allegedly committed by the codefendant and a different person.

Defense strategies and tactics are influenced by joint representation, but courts will not find a conflict of interest that requires speculation as to whether independent counsel would have pursued a strategy that would help one defendant while

11

subjecting the other to self-incrimination. *Echols*, 74 Ill. 2d at 327-28, 385 N.E.2d at 648 (holding that the possibility that independent counsel would have pursued a strategy that might exculpate one defendant at the possible expense of the others is too speculative to constitute impermissible antagonism); *People v. Sanchez*, 161 Ill. App. 3d 586, 594-95, 515 N.E.2d 213, 218-19 (1987) (finding no conflict of interest when defense counsel advised his client and potential but uncharged codefendant not to testify with potential exculpatory testimony because it would likely inculpate the witness in the offenses that were the subject matter of his other client's trial).

The fact that defense counsel did not pursue one strategy to exonerate his client because a risk existed that his former client would inculpate himself in other uncharged offenses does not create antagonistic defenses or a conflict of interest. *Sanchez*, 161 Ill. App. 3d at 594-95, 515 N.E.2d at 218. The attorney-client relationship regarding the offense on trial was terminated, the codefendant was not yet charged with the new offenses, the defense counsel had not been appointed or retained to represent the codefendant, and the trial court stated it would admonish the codefendant regarding his right against self-incrimination. It is just as likely that defense counsel did not call Smith as a witness because Smith's testimony would incriminate defendant. Any conflict of interest was too

12

speculative, and the trial court did not abuse its discretion when it denied defense counsel's motion to withdraw as counsel for defendant.

                    C. Defendant's Waiver of Jury Trial

Because a criminal defendant's right to a trial by jury is fundamental, the issue of whether the defendant knowingly waived that right is not forfeited by failure to raise it in the trial court and is "considered under the plain error rule." *People v. Bracey*, 213 Ill. 2d 265, 270, 821 N.E.2d 253, 256 (2004); 134 Ill. 2d R. 615(a). Because the issue presents a question of law and the facts are not in dispute, it is reviewed *de novo*. *Bracey*, 213 Ill. 2d at 270, 821 N.E.2d at 256.

A defendant validly waives her right to a trial by jury only if she does so "(1) understandingly; and (2) in open court." *People v. Scott*, 186 Ill. 2d 283, 285, 710 N.E.2d 833, 834 (1999); 725 ILCS 5/103--6 (West 2004). The trial court has a duty to ascertain whether a defendant understandingly waives her right to a trial by jury, but such a determination depends on the "facts and circumstances of each particular case." *People v. Tooles*, 177 Ill. 2d 462, 469, 687 N.E.2d 48, 51 (1997).

Although jury waivers made by defense counsel when the defendant was not present are invalid (*Scott*, 186 Ill. 2d at 285, 710 N.E.2d at 834), jury waivers are valid when made in open court by defense counsel "in defendant's presence where defendant

13

gave no indication of any objection." *People v. Frey*, 103 Ill. 2d 327, 332, 469 N.E.2d 195, 197 (1984). Failure to obtain a written waiver does not necessitate reversal (*People v. Brials*, 315 Ill. App. 3d 162, 176, 732 N.E.2d 1109, 1120 (2000)), but the existence of a written waiver supports a finding of a knowing waiver when accompanied by defense counsel's request for a bench trial made in open court and in the defendant's presence. *People v. Steiger*, 208 Ill. App. 3d 979, 982, 567 N.E.2d 660, 662 (1991).

A defendant is bound by defense counsel's waiver of a trial by jury when defendant is present in open court and does not object when the jury waiver is made or is explicitly discussed. Compare *People v. Johnson*, 347 Ill. App. 3d 442, 444-45, 807 N.E.2d 693, 696 (2004) (finding a valid waiver made by defense counsel in a pretrial hearing because defendant did not object then in subsequent hearings where the waiver was referenced), and *People v. Asselborn*, 278 Ill. App. 3d 960, 962-63, 664 N.E.2d 110, 112 (1996) (holding a waiver was valid when the defendant was present during a discussion regarding the jury waiver between the trial court and defense counsel immediately prior to trial), with *People v. Watson*, 246 Ill. App. 3d 548, 549, 616 N.E.2d 649, 650 (1993) (finding invalid waiver when made outside defendant presence even though defendant was present during subsequent rescheduling conferences when the bench trial was discussed).

14

Defendant was present during her arraignment when defense counsel requested a bench trial and waived her right to a trial by jury. Although the trial court did not explicitly discuss the waiver with the defendant, she did not express any objection and stated that she understood her presence was required for the bench trial. On the same day as her arraignment, defendant signed a written jury waiver, which further supports that she knowingly waived her right to a trial by jury. *People v. Steiger*, 208 Ill. App. 3d at 982, 567 N.E.2d at 662.

Based on the above analysis, we find that defendant knowingly waived her right to trial by jury. The defendant's two prior criminal convictions, along with six prior traffic convictions, while not necessary to our decision, add additional support for a finding of a knowing waiver because the convictions demonstrate a familiarity with the criminal justice system and, thus, a familiarity with her right to a trial by jury and with the ramifications of waiving that right. *Tooles*, 177 Ill. 2d at 471, 687 N.E.2d at 52-53 (finding defendant's four prior convictions supported a presumption of familiarity with jury waivers, thus supporting a finding of a valid waiver); *People v. Johnson*, 347 Ill. App. 3d at 445 (finding defendant's prior traffic and battery convictions demonstrated familiarity with the criminal justice system and supported a finding of a knowing waiver).

15

D. Credit for Presentence Incarceration

A defendant is entitled to a $5-per-day credit for each day of presentence incarceration. 725 ILCS 5/110--14 (West 2004); *People v. Raya*, 250 Ill. App. 3d 795, 802-03, 621 N.E.2d 222, 227-28 (1993); *People v. Woodard*, 175 Ill. 2d 435, 457-58, 677 N.E.2d 935 (1997). The State concedes this issue, and defendant is entitled to a $10 credit on her $200 fine for her two days of presentence incarceration.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Knox County, with instructions to the clerk to credit the defendant $10 for two days of presentence incarceration.

PRESIDING JUSTICE LYTTON specially concurring:

Section C of the majority's analysis correctly finds that the defendant waived a trial by jury because she did not object to her counsel's waiver of jury and request for a bench trial and because she signed a written jury waiver.

After resolving the issue however, the majority continues, saying that, "while not necessary to our decision," defendant's prior criminal convictions gave her a familiarity with the criminal justice system and, thus, she knew the import of a jury waiver. I do not believe this discussion belongs in the order for two reasons: 1) it is, as conceded by the majority, <u>dictum</u>;

16

and 2) it is wrong.

The majority cites two prior criminal convictions and six prior traffic convictions as evidence of defendant's familiarity with jury waivers in the criminal justice system.  However, the two criminal convictions, one of which was a misdemeanor, occurred in 1995, between ten and eleven years prior to defendant's guilty plea in this case.  The interval of more than a decade between those offenses and this case makes whatever information defendant did retain stale to the point of morbidity. It is speculative at best to expect a layperson to retain substantial knowledge of how the criminal justice system works under these circumstances.  Furthermore, the six minor, fine-only, traffic tickets were not exactly fresh:  illegal possession of alcohol in 1980; no insurance and failure to wear a seatbelt disposed of on the same day in 1998; no insurance in 1998; speeding in 2000; and an uninsured motor vehicle in 2003.  The traffic cases, like the criminal convictions, had aged substantially before defendant encountered the instant case.

So there we have it.  Defendant's "familiarity" with the criminal justice system was a ten-year-old felony, a ten-year-old misdemeanor, and a smattering of traffic tickets handed out over a period of 23 years.  Taken together, they give the defendant little basis for knowing the nature and import of a jury waiver. Thus, I would omit any reference to defendant's supposed

17

knowledge of the criminal justice system.

JUSTICE McDADE, dissenting:

The majority has found that a) the evidence was sufficient to convict defendant of theft beyond a reasonable doubt, b) the trial court did not abuse its discretion in denying defense counsel's motion to withdraw, c) defendant knowingly waived her right to a jury trial, and d) defendant is entitled to a $10 credit on her $200 fine and for two days' presentence incarceration.  Because I disagree with the majority's first finding and would thus reverse defendant's conviction outright, I dissent.

The majority concludes that the trier of fact could reasonably infer that defendant had knowledge of the criminal purpose and acted affirmatively to support that purpose by conversing with Smith during the crime and pointing to bundles of shingles.  Slip op. at 6.  "A reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents."  *People v. Davis*, 278 Ill. App. 3d 532, 540, 663 N.E.2d 39, 44 (1996).  See also *United States v. Jones*, 371 F.3d 363, 366 (7th Cir. 2004) ("although a jury may infer facts from other facts derived by inference, 'each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation.'"  *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002) (quoting *Piakowski v. Bett*, 256 F.3d 687, 693 (7th

18

Cir. 2001))). Accord *United States v. Cruz*, 285 F.3d 692, 699 (8th Cir. 2002); *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000); *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994).

"Although a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation. *Bett*, 256 F.3d 687, 693 (2001), citing *United States v. An Article of Device*, 731 F.2d 1253, 1262 (7th Cir. 1984), *Yelk v. Seefeldt*, 35 Wis. 2d 271, 151 N.W.2d 4, 9 (Wis. 1967). In this case, the inferences the majority believes are reasonable are not supported by a chain of factual evidentiary antecedents. The majority, in fact, cites no facts in support of the inferences upon which defendant's conviction is based. By example, while the evidence may establish that defendant conversed with Smith during the commission of the offense, nothing of record supports an inference that in doing so defendant was supporting Smith's criminal purpose. It is just as reasonable to infer that defendant was attempting to dissuade Smith. I recognize that the trier of fact is not required to "search out all possible explanations consistent with innocence" (slip op. at 4, citing *People v. Campbell*, 146 Ill. App. 3d 363, 380, 586 N.E.2d 1261, 1268 (1992)), and that there is also no evidence to support an inference that defendant was attempting to stop Smith. However,

19

while I acknowledge that my inference lacks specific evidentiary support, the majority does not, and to sustain a criminal conviction, the inference *must* be supported by fact. This is true because "[i]f an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *Davis*, 278 Ill. App. 3d at 540, 663 N.E.2d at 44.

Nor do I believe that defendant's merely accompanying Smith to the scene establishes, factually, that she assented to a common criminal design; and, therefore, it is not a fact in support of the proffered inference that she "affirmatively acted to support that purpose by conversing with Smith *** and pointing to bundles of shingles." Slip op. at 6. It is nothing more than an unsupported conclusion.

In *People v. Marx*, 291 Ill. 40, 125 N.E. 719 (1919), the State charged the defendant with rape. The co-defendants offered the victim a ride home from a cabaret where she worked to her residence in a hotel. The victim testified that "after they had gone a short distance in the automobile she was attacked, and [the passengers] all had sexual intercourse with her forcibly and against her will, on the back seat of the car." *Marx*, 291 Ill. at 42, 125 N.E. at 720. The victim also testified that they rode around the streets of the city for an hour and a half or two hours. The supreme court held that "[t]he presence of a

20

defendant at the commission of the crime, without disapproving or opposing it, is evidence which, *together with all other circumstances*, may present a jury issue as to his responsibility." (Emphasis added.) *Marx*, 291 Ill. at 48, 125 N.E. at 722.

The *Marx* court began by noting that "[i]t cannot be contended *** that mere presence at the commission of a criminal act renders a person liable as a participator therein. If he is only a spectator, innocent of any unlawful *intent* and does no act to countenance or approve the acts of those who are actors, he is not criminally responsible because he happens to be a looker-on and does not use active endeavors to prevent the commission of the unlawful acts." (Emphasis added.) *Marx*, 291 Ill. at 48, 125 N.E. at 722. The court found that the evidence established clearly that Marx, who was driving the automobile, did not in any way take part actively in the holding of the victim at the time when she charges the acts were being forcibly committed.

The evidence in *Marx* established more than the defendant's mere presence when the crime was committed. The facts also established that he drove the car several miles out of the way in Chicago while going from the cabaret to the hotel. The court used that fact to infer that "he was actually encouraging and approving what was being done in the car." *Marx*, 291 Ill. at 48-49, 125 N.E. at 722.

21

In this case, the majority does not cite any "other circumstances" to support its conclusion that defendant assented to the commission of the crime by accompanying Smith to the scene because none exist of record in this case.  Here, the only evidentiary facts cited are that defendant was at the scene, "fled" with Smith, and was with him at Lowe's afterward.  There is no evidence of record of whether Smith even told defendant that he was stealing the shingles.  The majority may claim that "it is *** established beyond a reasonable doubt that defendant was at the scene without disapproving of the commission of the crime" (slip op. at 7), but whether defendant approved of Smith's actions is not a fact, but an inference.

In *Bett*, the court found that the accounts of the crime placed the defendant at the scene when the confrontation began, but said "nothing about what [he] *** agreed with the others to do."  *Bett*, 256 F.3d at 692.  The court regarded the statement that another defendant hit the victim "like everybody else," and the state's consequent inference that the "everybody else" included the defendant, to be "ambiguous to say the least." *Bett*, 256 F.3d at 692.  The court found that the statement did "not constitute proof beyond a reasonable doubt that [the defendant] played a role in the incident, either as a direct participant or as a conspirator."  *Bett*, 256 F.3d at 693.

As in *Bett*, the fact that defendant accompanied Smith and

22

was still with him when the stolen shingles were returned to Lowe's does not by itself prove that she agreed to participate or was participating in a criminal enterprise (or indeed that she even knew there was a criminal enterprise), or support beyond a reasonable doubt the inference that she did so agree. That evidence merely proves that she was with Smith. Any actions defendant took while with Smith must have been done with an unlawful intent if those actions are to form the basis of a criminal conviction. *Marx*, 291 Ill. at 48, 125 N.E. at 722; *People v. Taylor*, 186 Ill. 2d 439, 448, 712 N.E.2d 326, 330 (1999) (guilt by accountability requires "specific intent to promote or facilitate an offense").

Dorothy's testimony that defendant pointed at shingles on the ground "could not have shed any light on the intended meaning of [defendant's actions]." *Cf. Bett*, 256 F.3d 693. The trial court's, and the majority's inference is no more than speculation consistent with guilt. However, as the court stated in *Davis*, "[a] person's liberty is an endowment that is too valuable to be lost on speculation of wrongdoing. Our system of government demands more: proof!" *Davis*, 278 Ill. App. 3d at 541, 663 N.E.2d at 45.

The majority also finds that the trier of fact could infer "from the facts" that defendant displayed a guilty conscience by getting back into the car when she saw the witness. Slip op. at

23

7. It fails, however, to cite what facts that inference might be based upon. I believe that a trier of fact could only infer that defendant displayed a consciousness of guilt by getting back into the car when she saw Dorothy if it first presumed that defendant's presence was in support of a common criminal design. I further believe that *any time* a trier of fact infers that a defendant's conduct evinces a consciousness of guilt, it must do so on the premise that the defendant is guilty of something. Drawing such an inference in the context of a criminal trial represents an error of circular reasoning, whereby the proponent "defends the claim by using the conclusion as one of the premises to support the conclusion." http://leo.stcloudstate.edu/acadwrite/logic.html#IRRELEVANT%20CON NECTIONS (visited February 3, 2007). Here, the claim is that defendant was guilty of an offense. The court used that conclusion, that defendant was guilty of something and hence "jumped in the car" when she saw Dorothy, as one of the premises to support that which it was ultimately trying to conclude: that defendant was guilty.

Because such reasoning is logically flawed, I would hold that it is erroneous for the State to argue a defendant's guilt based on the "consciousness of guilt" fallacy. Although decisions of our supreme court have examined certain evidence and held that such evidence was relevant and admissible to show a

24

consciousness of guilt, we find no binding precedent that forbids our holding that an amorphous, so-called "consciousness of guilt" is *itself* irrelevant and inadmissible to prove guilt.

To hold otherwise leaves open the door to the use of evidence which presumes guilt to prove guilt; evidence that also impermissibly shifts the burden to the defendant to prove her innocence. In this case, for example, defendant would have to convince the jury that she was *not* aiding Smith's theft of the shingles, *i.e.*, that she was not guilty of an offense, to prove that she re-entered the vehicle for a reason other than a "consciousness of guilt." Such presumptions stand in contravention of the presumption of innocence that remains with a criminal defendant until she is proved guilty with competent evidence beyond a reasonable doubt. See *People v. Pasch*, 152 Ill. 2d 133, 174, 604 N.E.2d 294, 310 (1992) ("the defendant is presumed innocent, *** this presumption remains until the jury is convinced beyond a reasonable doubt that defendant is guilty, *** the State has the burden of proving the defendant's guilt beyond a reasonable doubt, and *** this burden remains on the State throughout the case").

When assessing whether, taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt, the reviewing court should, first, determine

25

the ultimate conclusions of fact upon which a finding of guilt must be based.  These conclusions, of course, must comport with the elements of the offense.  Next, if the conviction is not based on direct evidence, the court must identify the inferential steps the trier of fact must have found to reach its ultimate conclusion.  Finally, and most importantly, the reviewing court must identify facts of record, and not suppositions, upon which each inference may reasonably be based.

While I recognize that triers of fact are not, and should not be, required to undertake such mechanical analyses, instead being free to draw reasonable inferences from common experience (see, *e.g., People v. Lambrecht*, 231 Ill. App. 3d 426, 439, 595 N.E.2d 1358, 1367 (1992) ("the jury, utilizing its common experience and knowledge, could draw its own inferences and conclusions")); I feel that courts of review must do so to give real meaning to "proof beyond a reasonable doubt."  It is often stated that,  in reviewing a conviction, the evidence must be viewed in a light most favorable to the prosecution.  This standard is not meant to favor the State, but to "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2789 (1979).  Thus, it merely serves to preserve

"the factfinder's role as weigher of the evidence *** through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573-74, 99 S. Ct. at 2789.

However, not only must we protect the integrity of the role of the fact finder, our primary duty is to assure the integrity of the verdict itself. The only way to do so meaningfully is to fully comprehend the jury's verdict.

In the case at bar, to prove defendant guilty of theft by accountability, the trier of fact had to conclude that defendant intended to aid Smith in taking the shingles with the intent to permanently deprive the owner of their use. The trial court inferred that defendant accomplished this by pointing out the shingles to Smith, and accompanying him in an apparent effort to exchange them for cash. The majority fails to cite any "other circumstances" to support an inference that she agreed to the criminal enterprise as required by *Marx*. My review of the case reveals no facts that lead to a reasonable inference that

27

defendant knew that Smith was stealing the shingles, that she agreed to help him, or that, by pointing to what was plainly on the ground before him, that she did in fact "aid" in the commission of the offense.  See *People v. Taylor*, 186 Ill. 2d 439, 448, 712 N.E.2d 326, 330 (1999) ("guilt under accountability is not supported where one \*\*\* neither intends to facilitate nor aids or attempts to aid the offender in the commission of any element of the offense").

It may well be that Janet Turner was an active knowing participant in the crime charged and that she is guilty on a theory of accountability.  Certainly the trial court and the majority *feel* that she was.  Our system does not, however, deprive people of their liberty on the basis of feeling, speculation, or conjecture--at least it purports not to do so.  Rather, we convict people only when there is factual evidence--which either demonstrates defendant's involvement or supports reasonable inferences of culpable involvement--sufficient to prove defendant guilty beyond any reasonable doubt.

Because I find the evidence of defendant's guilt of theft so unsatisfactory as to create a reasonable doubt of her guilt I would reverse defendant's conviction.  Accordingly, I dissent.