Filed 11/26/08          NO. 4-07-0723

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| SHAUNESSY GRIMES, | ) | No. 06CF1346 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine M. |
| | ) | McCarthy, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

Following a June 2007 trial, a jury convicted defendant, Shaunessy Grimes, of first degree murder (720 ILCS 5/9-1(a)(2) (West 2006)).  In August 2007, the trial court sentenced him to 35 years in prison.

Defendant appeals, arguing that (1) the trial court erred by denying his request to instruct the jury on (a) the lesser-included offense of involuntary manslaughter and (b) the issue of causation, and (2) the State failed to present sufficient evidence to prove that he was accountable for first degree murder.  We disagree and affirm.

I. BACKGROUND

In October 2006, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(2) (West 2006)), alleging that he and two codefendants, Demetrice C. Phillips and Stephanie

Boyd, were accountable for Jeremiah Maclin's death.  In May 2007, the trial court severed defendant's case from those of his co-defendants.

A summary of the evidence from defendant's June 2007 trial showed, in pertinent part, the following.

On September 21, 2007, Breanna Turner, defendant's girlfriend and mother of his child, got into an argument with Quinishia Frazier because Turner believed she was having a relationship with defendant.  Later that day, Turner and Boyd confronted Frazier near Van Dyke Street in Decatur, Illinois.  Turner and Frazier began fighting, and a crowd gathered.  Someone in the crowd threw a brick, which hit Boyd in the head.  Frazier then knocked Turner to the ground and several people from the crowd began to kick and stomp Turner.  Turner's cousin pulled Turner away from the group.

That same evening, Turner and Boyd told Phillips and defendant about the fight, which made defendant angry.  Phillips asked defendant whether he wanted to "shoot it up" and defendant replied, "Come on."  Turner, Boyd, Phillips, and defendant then proceeded to defendant's house, where defendant retrieved his .22-caliber, single-shot rifle.  Defendant placed the rifle on the back floorboard of Boyd's car, and the group headed back to Van Dyke Street.

Once they arrived near the scene of the earlier fight,

Phillips instructed Boyd to pull into a nearby alley. Defendant handed Phillips the rifle as they walked down the alley toward Van Dyke Street. Several minutes later, out of defendant's line of sight, witnesses from the crowd heard a shot fired in their direction. Maclin fell to the ground, bleeding from a fatal wound to the back of his neck. Defendant and Phillips ran back to the car, where Turner and Boyd were waiting. Before the group drove away, Phillips said that he "thought he saw someone fall." The next day, defendant and Phillips threw the rifle into the Sangamon River.

An autopsy performed by forensic pathologist Travis Hindman revealed that Maclin died from a gunshot wound to the right side of the back of his neck. However, due to a typographical error, Hindman's autopsy report indicated that the gunshot wound was to the left side of the back of Maclin's neck. Hindman's report also showed that (1) no bullet exit wound was found on Maclin's body and (2) two metallic fragments, which had a combined weight of 1.11 grams, were lodged at the base of Maclin's neck.

At trial, defendant vigorously cross-examined (1) Hindman regarding (a) the cause of Maclin's death and (b) his degree of certainty that the metallic fragments had actually come from defendant's .22-caliber rifle and (2) Detective Charles Hendricks, to determine whether he investigated other people who

may have been in the crowd with a gun.

Following the presentation of evidence and argument, the trial court conducted a hearing on the parties' proposed jury instructions outside the presence of the jury. At that hearing, defendant tendered (1) an involuntary manslaughter instruction as a lesser-included offense and (2) an instruction on causation, arguing that the State proved only that a shot was fired, but not that Phillips fired the shot that caused Maclin's death. The court denied defendant's requests.

The jury thereafter convicted defendant of first degree murder (720 ILCS 5/9-1(a)(2) (West 2006)), and the trial court sentenced him as stated.

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That the Trial Court Erred By Refusing His Proffered Jury Instructions

Defendant argues that the trial court erred by refusing his request to instruct the jury on the (1) lesser-included offense of involuntary manslaughter and (2) issue of causation. We address defendant's arguments in turn.

### 1. Standard for Giving a Lesser-Included Instruction

A jury instruction on a lesser-included offense is justified only when some evidence exists to support giving it to the jury. People v. Jones, 219 Ill. 2d 1, 31, 845 N.E.2d 598, 614 (2006). Whether an instruction on a lesser-included offense

- 4 -

is warranted depends on the facts and circumstances of each case. Jones, 219 Ill. 2d at 31, 845 N.E.2d at 614. The giving of a jury instruction on a lesser-included offense lies within the sound discretion of the trial court. People v. Jackson, 372 Ill. App. 3d 605, 613, 874 N.E.2d 123, 130 (2007), citing Jones, 219 Ill. 2d at 31, 845 N.E.2d at 614.

### 2. General Standard for Giving Jury Instructions

A party normally is entitled to a jury instruction when the evidence presented supports giving it. People v. Evans, 369 Ill. App. 3d 366, 380, 859 N.E.2d 642, 653 (2006). The evidence upon which a party relies to justify his request for an instruction must be more than a mere factual reference or witness's comment. Otherwise, a defendant could force the trial court to include unlimited instructions unrelated to the case. Evans, 369 Ill. App. 3d at 380, 859 N.E.2d at 653. We review a court's refusal to give a jury instruction for an abuse of discretion. People v. Dorn, 378 Ill. App. 3d 693, 698, 883 N.E.2d 584, 588 (2008).

### 3. Instruction on Involuntary Manslaughter

Defendant argues that the trial court erred by refusing to instruct the jury on the lesser-included offense of involuntary manslaughter. Specifically, defendant contends that he presented sufficient evidence that Phillips' conduct was reckless, rather than intentional, which justified an instruction on

- 5 -

involuntary manslaughter. In support of his contention, defendant asserts that the cumulative evidence was enough to suggest that his mental state and, subsequently, his actions, were reckless, rather than intentional. The State responds that the evidence was not sufficient to warrant an instruction on involuntary manslaughter because Phillips did not act recklessly. We agree with the State.

### a. Defendant's Intent

Initially, we note defendant's assertion that his intent is somehow relevant to our inquiry into whether he was entitled to an involuntary manslaughter instruction. This assertion is not correct. To prove accountability, the State must demonstrate, beyond a reasonable doubt, that either (1) defendant shared the principal's criminal intent or (2) there was a common criminal design. People v. Perez, 189 Ill. 2d 254, 266, 725 N.E.2d 1258, 1264-65 (2000).

As the supreme court explained in Perez, when two or more persons engage in a common criminal design, any acts committed by one party to further the common design are attributable to all parties to the common design, rendering each party individually responsible for the consequences of the others' acts. Perez, 189 Ill. 2d at 267, 725 N.E.2d at 1265. A defendant need not affirmatively act when a common criminal plan or purpose exists. People v. Turner, 375 Ill. App. 3d 1101, 1104, 875

N.E.2d 175, 180 (2007).  "A common criminal plan or design can be inferred from the circumstances, and a defendant need not express '[w]ords of agreement' to be held accountable for a codefendant's criminal acts."  Turner, 375 Ill. App. 3d at 1104, 875 N.E.2d at 180, quoting People v. Taylor, 164 Ill. 2d 131, 141, 646 N.E.2d 567, 571 (1995).

In this case, the State tried defendant for first degree murder on an accountability theory premised upon the fact that he and Phillips engaged in a common criminal design.  Therefore, the State was not required to prove defendant shared Phillips' intent, a fact that the trial court explained when it denied defendant's request to instruct the jury on involuntary manslaughter as follows:

> "The only thing we have here is the defendant himself testifying that [his actions were] intended to scare, and that he didn't have intent.

> * * *

> When [Phillips] intend[ed] to fire a gun, point[ed] it in the general direction of his *** intended victim, and [shot], such conduct [was] not merely reckless and does not warrant an involuntary manslaughter instruction, regardless of [Phillips'] asser-

- 7 -

tion that he *** did not intend to kill any-

one.

*** [T]hat also applies in this case

even on accountability theory, even though

defendant wasn't the shooter."

Thus, the trial court essentially found that (1) defendant's intent was irrelevant because he was tried on the theory that defendant and Phillips engaged in a common criminal design and (2) the focus should have been on Phillips' intent, which could not have been reckless under the circumstances. We agree with the trial court. That defendant may have possessed some lesser intent, such as recklessness, is not relevant to our inquiry.

### b. Sufficiency of the Evidence To Justify an Involuntary Manslaughter Instruction

We now turn to the underlying issue of whether the trial court correctly found that defendant failed to present sufficient evidence to justify an involuntary manslaughter instruction. A person commits first degree murder when in performing the acts that cause another's death, "he knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9-1(a)(2) (West 2006). On the other hand, a person commits involuntary manslaughter when he unintentionally kills another by recklessly performing an act that is likely to cause death or great bodily harm. 720 ILCS 5/9-3(a) (West 2006).

"It is well established that proof that a death re-sulted from a defendant's act of deliberately firing a gun in the general direction of his victim is sufficient to sustain a conviction for first-degree murder." People v. Lemke, 384 Ill. App. 3d 437, 446, 892 N.E.2d 1213, 1220 (2008); see Jackson, 372 Ill. App. 3d at 613-14, 874 N.E.2d at 130 ("when the defendant intends to fire a gun, points it in the general direction of his or her intended victim, and shoots, such conduct is not merely reckless ***, regardless of the defendant's assertion that he or she did not intend to kill anyone").

Looking to Phillips' conduct (because he was the primary actor in this case), the record reveals that defendant failed to present any evidence that Phillips acted recklessly. Phillips did not testify at defendant's trial, leaving the trial court to make its ruling based on the following circumstantial evidence of Phillips' intent: (1) getting out of the car; (2) asking defendant to hand him the rifle; (3) walking around the corner of a house; (4) firing a rifle in the direction of the crowd; (5) running back to the car; (6) telling the group that he "thought he saw someone fall"; and (7) throwing the rifle into the Sangamon River the next day. We conclude that a lesser-included offense instruction on involuntary manslaughter was not justified. Accordingly, the trial court did not abuse its discretion by refusing defendant's request to present such an

- 9 -

instruction to the jury.

## 4. Instruction on Causation

Defendant next argues that the trial court erred by refusing his proffered causation instruction pursuant to Illinois Pattern Jury Instructions, Criminal, No. 7.15 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 7.15). Specifically, defendant contends that an instruction on the element of causation was required because (1) the State failed to prove that Phillips ever fired the rifle and (2) even if Phillips had fired the rifle, the State failed to prove that Phillips' bullet was the same bullet that (a) hit Maclin or (b) caused his death. The State responds that a causation instruction was not required because the evidence showed that (1) a single shot was fired, (2) Phillips fired that shot, and (3) the shot caused Maclin's death. We agree with the State.

The instruction on causation in homicide cases reads as follows:

"In order for you to find that the acts of the defendant caused the death of [the victim], the State must prove beyond a reasonable doubt that defendant's acts were a contributing cause of the death and that the death did not result from a cause unconnected with the defendant. However, it is not nec-

- 10 -

essary that you find the acts of the defendant were the sole immediate cause of death."

IPI Criminal 4th No. 7.15.

The homicide-causation instruction should be given when an alternative explanation for the cause of death is argued by the defense. People v. Pinkney, 322 Ill. App. 3d 707, 718, 750 N.E.2d 673, 681 (2000). However, trial courts should be especially cautious about giving the homicide-causation instruction when a defendant is tried on a common-design theory because the instruction could confuse the jury. Pinkney, 322 Ill. App. 3d at 720, 750 N.E.2d at 683.

In response to defendant's request to instruct the jury on the issue of causation, the trial court found the following:

"I don't find any evidence *** that the death resulted from any cause other than the shooting by *** Phillips for which the defendant is accountable. So I find mere speculation that another gun was involved. I just don't think there is any evidence in the record that the gun shot that killed *** Maclin came from some other source.

* * *

With a jury instruction, it is only the [c]ourt's responsibility to determine if

there is sufficient evidence that warrants a jury instruction on it, which is a higher level than [defendant] being able to argue reasonable inferences from the evidence which is what [defendant] want[s] to do in this case. [The court] is merely stating that there is insufficient evidence to warrant a jury instruction [on causation]."

In this case, defendant did not argue any other remotely plausible explanation for Maclin's death. The evidence presented at trial revealed that (1) Phillips walked around the corner of a house, (2) Phillips fired in the direction of the crowd, and (3) Maclin fell to the ground with a fatal gunshot wound to the back of the neck. The fact that defendant vigorously cross-examined (1) Hindman about the type and weight of the bullet fragments retrieved from Maclin's neck and (2) Hendricks regarding whether they questioned other persons who may or may not have been at the scene with a gun falls short of a plausible explanation for a cause unconnected to defendant sufficient to warrant an instruction on the element of causation.

Therefore, we conclude that the trial court did not abuse its discretion by refusing defendant's request to instruct the jury on the element of causation.

B. Defendant's Claim That the State's Evidence Was Insufficient To Prove Him Guilty Beyond a Reasonable Doubt

Defendant next argues that the State failed to prove beyond a reasonable doubt that (1) Maclin died from a gunshot wound or (2) Phillips caused Maclin's death. Essentially, defendant contends that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. We disagree.

### 1. Standard of Review

We review a defendant's challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. People v. Wheeler, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007). "This same standard of review applies regardless of whether the evidence is direct or circumstantial ***." People v. Cooper, 194 Ill. 2d 419, 431, 743 N.E.2d 32, 40 (2000). Because the jury is in the best position to judge the credibility and demeanor of the witnesses, its findings are entitled to great weight. Wheeler, 226 Ill. 2d at 114-15, 871 N.E.2d at 740.

### 2. Defendant's Accountability for the Common Criminal Design

A defendant is accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS

5/5-2(c) (West 2006). To prove accountability, the State must demonstrate beyond a reasonable doubt that either (1) defendant shared the principal's criminal intent or (2) there was a common criminal design. Perez, 189 Ill. 2d at 266, 725 N.E.2d at 1264-65. "A defendant's mental state is ordinarily proved circumstantially by inferences reasonably drawn from the evidence." People v. Jones, 376 Ill. App. 3d 372, 383, 876 N.E.2d 15, 25 (2007).

The following nonexhaustive circumstances may be considered by the factfinder when determining a defendant's legal accountability: (1) his presence at the scene without disapproval; (2) flight from the scene; (3) failure to report the crime; (4) his close affiliation with the codefendant after the crime is committed; (5) the sharing of any proceeds from the criminal act; and (6) the destroying or disposing of evidence. Turner, 375 Ill. App. 3d at 1104, 875 N.E.2d at 180-81.

In this case, defendant (1) was present at the scene without disapproval, (2) fled the scene with Phillips, (3) did not report the crime until pressured by law enforcement, (4) worked with Phillips after the shooting to dispose of the rifle, and (5) attempted to dispose of the rifle by throwing into the Sangamon River. Further, defendant intended for, and conspired with, Phillips to confront the crowd, brandish the rifle, and "shoot it up." Therefore, defendant was responsible for Phillips' conduct in furtherance of that common criminal design.

- 14 -

### 3. The Murder for Which Defendant Was Accountable

"[W]hen [an individual] intends to fire a gun, points it in the general direction of his or her intended victim, and shoots, such conduct is not merely reckless ***, regardless of the defendant's assertion that he or she did not intend to kill anyone." Jackson, 372 Ill. App. 3d at 613-14, 874 N.E.2d at 130. Indeed, "[i]t is well established" that such conduct can never be reckless. Lemke, 384 Ill. App. 3d at 446, 892 N.E.2d at 1220 (affirming the defendant's conviction for first degree murder).

Here, Phillips agreed with defendant to confront the crowd, brandish the rifle, and "shoot it up," a common criminal design that resulted in Maclin's murder. Given the evidence presented by the State--which we have previously summarized--the jury could have reasonably inferred that (1) Phillips murdered Maclin and (2) defendant was accountable for Phillips' actions in that regard.

Accordingly, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that defendant was accountable for the first degree murder of Maclin, which resulted from defendant's common criminal design.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

- 15 -

Affirmed.

KNECHT and COOK, JJ., concur.