THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE MOORE, Defendant-Appellant.

First District (1st Division)   No. 1—01—0436

Opinion filed March 24, 2003.

Michael J. Pelletier and Geneva L. Penson, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Heather Weiss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court: ·

This case comes before us for a second time. The trial court, in a bench trial, found that defendant, Eugene Moore, attempted to murder Mickey Russell in 1999. Defendant, *pro se*, filed a motion for new trial, alleging that his public defender failed to provide effective assistance of counsel. The trial court dismissed the motion without a hearing. On the original appeal, we remanded the case for an evidentiary hearing on the factual allegations of the motion for new trial. *People v. Moore*, No. 1—00—1595 (2000) (unpublished order under Supreme Court Rule 23).

Before the hearing on remand, defendant moved for the appointment of counsel not affiliated with the public defender's office. The trial court denied the motion. The trial court then heard evidence concerning the assistance the public defender provided defendant at trial. The court again denied the motion for new trial. On this appeal, defendant argues that we should reverse the decision and remand for a new hearing on the motion for new trial because his public defender for the hearing on remand operated under a conflict of interest.

We hold that the trial court did not abuse its discretion when it denied the motion for appointment of new counsel. We also find that defendant did not meet his burden of proving that an actual conflict of interest adversely affected the performance of his counsel at the hearing on the motion for new trial. Therefore, we affirm the dismissal of the motion for new trial, and we affirm the conviction and sentence.

At the trial Mickey Russell and Owen Brown testified that they saw defendant shoot Russell after 7 p.m. on April 30, 1999. Nicole Holland testified that she spent all that evening with defendant, from before 7 p.m. on April 30 until the following morning. The trial court found defendant guilty of attempted murder and sentenced him to 15 years in prison. In his motion for new trial, defendant alleged that his trial attorney, James Murphy, did not effectively impeach prosecution witnesses and he could have impeached them if he had asked questions defendant suggested.

Following our remand of the case to the trial court for a hearing

on the motion for new trial, defendant, again *pro se*, supplemented the posttrial motion with passages he copied from the trial transcript. He alleged that the passages showed Murphy's incompetence. The court appointed another public defender, Luther Hicks, to assist defendant with the posttrial motion.

Defendant moved for appointment of new counsel, unaffiliated with the public defender's office, to assist with the posttrial motion. Defendant added some new allegations concerning Murphy's conduct. Most notably, defendant alleged that Murphy failed to interview alibi witnesses who could have exonerated defendant. But defendant made no allegations concerning the relation between Murphy and Hicks. Instead, defendant summarily stated that he "believe[d] that he [would] not be adequately represented by the office of the Public Defender or any of their attorneys," and that "further representation by the office of the Public Defender and their attorneys would not be in the best int[e]rest of Justic[e]."

Defendant presented his motion for appointment of new counsel *pro se*, after Hicks first introduced the motion to the court and with Hicks remaining in court while defendant presented the motion. The court asked defendant, "Why should I appoint somebody other than the Public Defender?" Defendant said only that Murphy had not tried defendant's case "the way it should be tried," and Hicks was "from the same office." The trial court found the stated reasons insufficient, so the court denied the motion. Hicks represented defendant for the evidentiary hearing on the motion for new trial.

Defendant testified that he told a public defender that he had five alibi witnesses. When Murphy replaced that attorney, shortly before trial, defendant told him, too, about the alibi witnesses. The attorneys never subpoenaed the witnesses. Murphy never showed defendant the police reports or Brown's written statement, and never discussed with defendant the police reports or Brown's statement. Murphy did not move to suppress the photo lineup from which Russell and Brown first identified defendant as the shooter.

Hicks asked defendant:

> "Now, tell the Judge what you believe *** Mr. Murphy did wrong during the course of this trial to make you believe that he was ineffective?"

Defendant pointed first to Murphy's failure to impeach the prosecution witnesses. Hicks elicited defendant's testimony concerning the specific impeachment available. When defendant finished discussing each point of putative impeachment, Hicks asked:

> "Is there anything else that you want to tell the Judge, any other reason that you believe that the Public Defender was ineffective in your case?"

Defendant said he had no further reasons for the motion.

On cross-examination defendant admitted that he never gave any public defender a written list of alibi witnesses. On redirect Hicks elicited defendant's testimony that he told the attorneys orally about the witnesses. Hicks asked whether defendant gave the names of the witnesses. Defendant testified he told the attorneys the first names of the five witnesses, but he did not know the last names or addresses of the five witnesses.

Murphy testified, for the prosecution, that he showed defendant all police reports and witness statements, and he discussed those documents with defendant. Defendant told Murphy that he had known Russell and Brown for years. Murphy said defendant gave him only two first names for potential alibi witnesses, and he could not find the witnesses from those names. When Nicole Holland showed up for trial, Murphy added her name to defendant's witness list and added an alibi defense to defendant's answer.

On cross-examination Murphy repeated that he showed defendant the police reports and Brown's statement. Murphy swore that he went over every sentence of the police reports with defendant. Hicks asked Murphy why he did not move to suppress the identifications of defendant on the basis of the suggestive photo lineup. Murphy said he did not believe the motion would succeed because defendant had known both Brown and Russell for a long time.

In closing Hicks argued that the court should believe defendant rather than Murphy on all facts on which their testimonies conflicted. He argued that Murphy acted incompetently because he failed to find the alibi witnesses, he failed to move to suppress the identifications of defendant, and especially because he failed to impeach the prosecution witnesses. The trial court denied the motion for new trial, finding that Murphy provided "appropriate representation and fine representation" for defendant during the trial.

On appeal defendant argues only that Hicks labored under a conflict of interest in presenting the motion for new trial based on the alleged ineffectiveness of his colleague, Murphy. Neither defendant nor the prosecution discusses the applicable standard of review. We find no cases that clearly set out the appropriate standard of review.

■ In *People v. Spreitzer*, 123 Ill. 2d 1 (1988), our supreme court elucidated the principles applicable when a defendant in a criminal case contends that he did not receive the effective assistance of counsel because his attorney faced a conflict of interest. The court distinguished two kinds of cases. In one group:

> "certain facts about a defense attorney's status were held to engender, *by themselves,* a disabling conflict. In every case the

conflict was created by the defense attorney's prior or contemporaneous association with either the prosecution or the victim. [Citations.] In each of these cases we have said that there is no need to show that the attorney's actual performance was in any way affected by the existence of the conflict." (Emphasis in original.) *Spreitzer*, 123 Ill. 2d at 14-15.

In a second group of cases, generally involving joint representation of codefendants, courts usually refused to reverse the trial court's judgment without proof that the alleged conflict actually affected the attorney's performance. *Spreitzer*, 123 Ill. 2d at 17. But the alleged conflicts led to different appellate treatment, depending upon the notice given to the trial court about the alleged conflict. *Spreitzer*, 123 Ill. 2d at 17-18. The court said:

"If counsel brings the potential conflict to the attention of the trial court at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel. *** While this rule is not *per se* (since it is the attorney's contemporaneous allegations of a conflict and not the mere presence of multiple representation which gives rise to the trial court's duty), reversal of a conviction under this rule does not require a showing that the attorney's actual performance was in any way affected by the purported conflict. ***

However, if the trial court is not apprised of the potential conflict, then reversal of the conviction will only be had upon a showing that 'an actual conflict of interest adversely affected' counsel's performance. (*Cuyler [v. Sullivan]*, 446 U.S. [335,] 350, 64 L. Ed. 2d [333,] 348, 100 S. Ct. [1708,] 1719[ (1980)].) What this means is that the defendant must point to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict. In this sense, proof of an actual conflict of interest requires proof of what we have sometimes referred to in our *per se* cases as 'prejudice' or 'actual prejudice.' On the other hand, it is also clear that the defendant is never required to prove that his attorney's deficiencies did not constitute harmless error. He is not required, in other words, to prove that the conflict contributed to his conviction." *Spreitzer*, 123 Ill. 2d at 18-19.

Here, defendant told the court prior to the hearing about the potential conflict of interest Hicks faced as a public defender, arguing that Murphy, another public defender working for the same office, provided ineffective assistance of counsel. Illinois courts in many cases have held that a public defender faces no *per se* conflict of interest when he argues that another public defender from the same office provided ineffective assistance of counsel. *E.g., People v. Banks*, 121

Ill. 2d 36, 41-44 (1987). Instead, the trial court must evaluate the facts of each case to determine whether the specific circumstances indicate an actual conflict of interest. *Banks*, 121 Ill. 2d at 44. When the defendant has raised the possibility of an actual conflict of interest, the court's failure to conduct an appropriate inquiry is grounds for remand. See *People v. Vaughn*, 200 Ill. App. 3d 765, 770 (1990).

■ Neither *Spreitzer* nor *Banks* specifies the standard of review applicable when the trial court, after a hearing, denies a request for new counsel due to a conflict of interest. Because the decision involves the court's need to oversee the courtroom and maintain the progress of proceedings, we find that the trial court has discretion to grant or deny a motion for new counsel due to a conflict of interest, and we will not disturb the decision absent an abuse of that discretion. See *People v. Coleman*, 183 Ill. 2d 366, 387 (1998); *People v. Holmes*, 141 Ill. 2d 204, 224 (1990). But case law closely circumscribes the court's discretion when a defendant claims his counsel has a conflict of interest. The defendant need show only an appearance of impropriety; if he does so, the court must either replace the attorney facing the conflict or obtain an express waiver from the defendant. *People v. Sanders*, 294 Ill. App. 3d 734, 737 (1998).

■ Here, defendant said only that Hicks and Murphy worked as public defenders for the same office. When the court inquired appropriately, defendant suggested no further special circumstances indicative of an actual conflict of interest. Without more facts concerning the relationship between Hicks and Murphy, or other circumstances showing an actual conflict, we cannot say that the trial court abused its discretion by denying the motion for appointment of new counsel. See *People v. Jones*, 210 Ill. App. 3d 375, 378 (1991).

Defendant argues on appeal that Hicks's conduct during the hearing on the posttrial motion proves that he had an actual conflict of interest that adversely affected his performance. Because defendant did not have this evidence of actual conflict at the time of his motion for new counsel, the trial court did not consider this evidence in its ruling. Accordingly, the precise issue defendant now raises was not raised in the trial court. In *Spreitzer* the court held that in such cases the defendant has the burden of showing that the conflict led to specific defects in counsel's strategy or decisions. *Spreitzer*, 123 Ill. 2d at 18.

On the issue of whether Hicks's conduct proves a conflict of interest affected his performance, we have no findings of the trial court to which to defer. We review the record only to determine whether a preponderance of the evidence shows that a conflict of interest led to specific defects in Hicks's performance as defendant's attorney.

Defendant contends that Hicks showed his allegiance to Murphy rather than defendant by the questions he asked on cross-examination of Murphy, by failing to add to defendant's written claims for ineffective assistance of counsel, and by distancing himself from defendant's allegations.

An insufficient cross-examination can be an important indication of an actual conflict of interest affecting counsel's performance. *People v. Murry*, 305 Ill. App. 3d 311, 315 (1999). But in this context, as in cases where a defendant claims ineffective assistance of counsel, the defendant must present some basis for concluding that more aggressive cross-examination would have produced better testimony for defendant. See *People v. Nunez*, 263 Ill. App. 3d 740, 749 (1994). When defense counsel elicits testimony that proves a critical element of the prosecution's case, counsel's acts may constitute ineffective assistance. *People v. Jackson*, 318 Ill. App. 3d 321, 328 (2000). Similarly, elicitation of testimony damaging to the defendant's case may indicate that the alleged conflict of interest has affected counsel's performance.

Here, Hicks elicited repetition of Murphy's testimony that he showed defendant police reports and Brown's written statement, and he discussed the documents with defendant. The testimony directly contradicted defendant's testimony. Hicks also asked Murphy why he failed to file a motion to suppress identification testimony.

The testimony elicited on cross-examination did not prove any critical element of the prosecution's case. Murphy contradicted defendant's testimony about pretrial discussions, but the testimony on cross-examination on the issue added nothing to Murphy's direct testimony to the same effect. Compare *Jackson*, 318 Ill. App. 3d at 328. Hicks may have cross-examined Murphy on the extent of pretrial discussions with defendant to test Murphy's credibility.

Hicks also tested the credibility of Murphy's reasons for failing to file a motion to suppress identification testimony. If Hicks had not questioned Murphy about his reasons, the trial court should have presumed that Murphy had a legitimate strategic basis for the decision not to file the motion. See *People v. Harris*, 129 Ill. 2d 123, 156 (1989). Defendant has not indicated what evidence Hicks could have adduced with more aggressive cross-examination of Murphy. The cross-examination does not demonstrate that a conflict of interest affected Hicks's performance.

Hicks did not amend defendant's posttrial motion. In *People v. Hawkins*, 44 Ill. 2d 296 (1970), the trial court appointed counsel to assist the postconviction petitioner with his deficient petition. Counsel made no effort to amend the petition or clarify the petitioner's claims. Instead, he merely recited the claims as the petitioner had stated

them. Our supreme court reversed and remanded the judgment dismissing the postconviction petition because of the inadequate postconviction representation.

While failure to amend a patently defective postconviction petition constitutes inadequate assistance of counsel, posttrial counsel has no obligation to comb the trial record to find new issues the petitioner did not raise in his *pro se* postconviction petition. *People v. Helton*, 321 Ill. App. 3d 420, 424-25 (2001). Hicks helped defendant present coherent legal argument for the claims defendant raised in his motion for new trial. Defendant on appeal has not suggested any claims Hicks would have added to the petition if he had no conflict of interest. The failure to add new claims to the motion here does not show that Hicks acted under a conflict of interest.

Finally, defendant claims that Hicks distanced himself from defendant's arguments in the manner in which he phrased some questions. In particular, Hicks asked defendant on direct examination why defendant believed Murphy provided ineffective assistance, and Hicks asked if defendant wanted to tell the court anything else about Murphy's actions. We agree that defense attorneys generally do not so clearly inform the court that the arguments presented originate from the defendant and not from the attorney. The peculiar phrasing of the questions here undercut any implication that Hicks might share defendant's beliefs about Murphy's conduct and reminded the court of the need to assess the credibility of defendant's testimony. Nonetheless, we find that the two ill-phrased questions here do not suffice to meet defendant's burden of proving that Hicks acted under a conflict of interest that affected his presentation of defendant's claims.

Defendant's charge that Murphy, a public defender, provided ineffective assistance of counsel did not create an appearance of a conflict of interest for Hicks, the new public defender appointed to assist defendant with his posttrial petition. The trial court did not abuse its discretion by denying the motion for appointment of an attorney other than a public defender for the hearing on the motion for new trial. Hicks's cross-examination of Murphy sufficiently challenged Murphy's credibility, and it did not elicit any critical element of the prosecution's case. Defendant did not show how more aggressive cross-examination of Murphy would have improved defendant's chances of obtaining a new trial. Hicks helped defendant present evidence and proper legal argument in support of his claims. While the phrasing of two questions on direct examination appeared to distance Hicks from defendant's claims and testimony, we cannot say that the evidence as a whole suffices to prove that Hicks acted under a conflict of interest that adversely affected his performance as defense counsel. Accord-

ingly, we affirm the denial of the motion for a new trial, and therefore we affirm the conviction and sentence.

Affirmed.

GORDON, P.J., and SMITH, J., concur.